# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
# WESTERN DIVISION

**HENRY HINTON, JR.**                                            **PLAINTIFF**

**v.**                          **CIVIL ACTION NO. 5:16-cv-33-DCB-MTP**

**JANET MOORE**                                             **DEFENDANT**

## REPORT AND RECOMMENDATION

THIS MATTER came before the Court for an evidentiary hearing on January 29, 2018, pursuant to 28 U.S.C. § 636(b)(1)(B) and Federal Rule of Civil Procedure 72(b).[1] Plaintiff appeared *pro se*, and Honorable Wayne Dowdy appeared on behalf of Defendant Janet Moore. Having heard the arguments of the parties and considered all the evidence, the undersigned finds that Plaintiff failed to prove by a preponderance of the evidence the claim asserted against Defendant. Accordingly, the undersigned recommends that this matter be dismissed with prejudice.

## BACKGROUND

This lawsuit arises from events which took place while Plaintiff was incarcerated at the Pike County Jail.[2] According to Plaintiff, he entered the jail on June 30, 2014, and was

---

[1] On May 16, 2016, United States District Judge David Bramlette referred this matter to the undersigned United States Magistrate Judge for all further proceedings, including evidentiary hearings, pursuant to 28 U.S.C. § 636 and Rule 72. *See* Order [8] (referring this matter to the Magistrate Judge to, *inter alia*, conduct hearings and submit to the District Judge "proposed findings of fact and recommendations for the disposition of this cause.").

[2] Plaintiff also filed two other lawsuits arising from events which took place at the Pike County Jail. *See* Civil Action No. 5:15-cv-77-DCB-MTP; Civil Action No. 5:16-cv-14-KS-MTP. Additionally, Plaintiff filed a lawsuit concerning the events surrounding his arrest in Pike County, but the Court dismissed that action on December 12, 2016. *See* Civil Action No. 5:16-cv-15-DCB-MTP.

1

transferred to a Mississippi Department of Corrections facility on November 24, 2015. Plaintiff asserts a claim for denial of adequate medical care against Defendant Nurse Janet Moore. As relief, Plaintiff seeks compensatory damages.

## ANALYSIS

During the evidentiary hearing, Plaintiff testified that he does not have high blood pressure, but has "high blood pressure tendencies." According to Plaintiff, his blood pressure is not high unless he eats a lot of salt. Plaintiff testified that he informed Nurse Moore that he wanted a low salt diet. According to Plaintiff, Nurse Moore responded by stating, "do not tell me what you want; tell me what your symptoms are," and informing Plaintiff that the jail does not provide a low salt diet.

Plaintiff testified that he began to feel sick, but Nurse Moore did not provide him help. Plaintiff stated that he wrote letters to a lieutenant at the jail and the mayor of the city. According to Plaintiff, he was taken to the Osyka Medical Clinic in November of 2014, and he informed the nurse practitioner at the clinic, Kim Snow,[3] that he needed a low salt diet. Plaintiff stated that Nurse Snow did not provide him a low salt diet, but provided him blood pressure medications. Plaintiff testified that he continued to feel sick, and Nurse Moore informed him that it would take time for the blood pressure medication to work.

Plaintiff testified that after he woke up on December 19, 2014, he had pain in his arm and was unable to move the arm well. According to Plaintiff, he informed Nurse Moore that he had a stroke, but she refused to send him to the hospital and stated, "that will teach you to stay out of

---

[3] Plaintiff initially named Kim Snow as a defendant in this action, but on February 13, 2017, the Court dismissed Plaintiff's claims against Snow pursuant to 28 U.S.C. § 1915(e)(2)(B). *See* Order [32].

jail."[4]  Plaintiff stated that he continued to submit sick call requests, and in February of 2015, he was placed in a "hallway" cell for better observation.  Plaintiff testified, however, that Nurse Moore only checked his blood pressure once.  He also testified that he washed his food in order to reduce the amount of salt.

As an example of similar behavior on the part of Nurse Moore, Plaintiff testified that in June of 2015, he complained of constipation and requested a high fiber diet, but Nurse Moore denied his request and instead sent him to Osyka Medical Clinic, where he was given a prescription for a stool softener.  He also stated that Nurse Moore refused to send him to a dentist after he lost a tooth and refused to refer him for surgery for a knot on his side.

Nurse Moore also testified during the evidentiary hearing, and her testimony paints a very different picture.  She submitted a medical record demonstrating that she recommended a "no added salt" diet for Plaintiff, but he refused to sign the form. *See* Defendant's Exhibit 1.  Nurse Moore also testified that the food served at the jail is not high sodium food.  According to Nurse Moore, she checked Plaintiff's blood pressure multiple times during his incarceration at the Pike County Jail.  She submitted a medical record indicating that Plaintiff's blood pressure was checked twenty-seven separate times at the jail. *See* Defendant's Exhibit 6(e).

Nurse Moore testified that although Plaintiff's blood pressure was sometimes high, it never reached dangerous levels.  According to Nurse Moore, she referred Plaintiff to the Osyka Medical Clinic in November of 2014 because he decided that he wanted medications. *See* Defendant's Exhibit 9(c).  She stated that once medications were prescribed, she provided them to Plaintiff.

---

[4] Plaintiff submitted affidavits from other inmates stating that Nurse Moore told Plaintiff to stay out of jail. *See* Plaintiff's Exhibits E1, E2, E3.

She testified that on December 19, 2014, Plaintiff approached her and said he had a stroke. According to Nurse Moore, she assessed Plaintiff and, after seeing no symptoms of a stroke, decided not to send him to the hospital. Nurse Moore stated that Plaintiff was using his arm, had no facial drooping, had no speech difficulty, and had no difficulty with walking. *See* Defendant's Exhibit 6(c). She also observed Plaintiff on the jail's cameras and saw that he appeared to have full use of his arms.

In response to this testimony, Plaintiff pointed out that jail policy requires the following: "In the event of a medical emergency, or a perceived medical emergency, jail staff on duty will arrange for medical services without undue delay." *See* Plaintiff's Exhibit A3. Nurse Moore replied that she did not perceive a medical emergency. She also stated that nearly all the inmates claim they have a medical emergency, and that is why she has to assess them to determine if there is a real emergency.

Nurse Moore also testified that after Plaintiff was attacked by other inmates on July 21, 2015, she assessed his injuries, provided him ice packs, and sent to an outside medical provider, Stat Care. According to Nurse Moore, Plaintiff also received treatment from an ophthalmologist and otolaryngologist. Nurse Moore stated that she followed the orders of these doctors.

Additionally, Nurse Moore testified that Plaintiff was provided Colace and MiraLAX for his issues with constipation, and that she provided these medications and even requested that the Colace be provided as a daily medication. *See* Defendant's Exhibit 9(b). She also stated that on July 13, 2015, after Plaintiff complained about losing a tooth, she assessed him and found no issues, such as bleeding or swelling, requiring referral to a dentist. *See* Defendant's Exhibit 6(a). Finally, she stated that Nurse Practitioner Kim Snow initially referred Plaintiff for surgery for the

4

knot on his side, but Nurse Snow called the jail and retracted the referral. *See* Defendant's Exhibit 6(a). According to Nurse Moore, that is the reason she did not refer Plaintiff for surgery.

A pretrial detainee has a due process right to receive reasonable medical care. *See hare v. City of Corinth*, 74 F.3d 633, 650 (5th Cir. 1996). The right is equivalent to the Eighth Amendment right enjoyed by prisoners. *Id*. Thus, a pretrial detainee seeking to recover for a denial of adequate medical care must establish deliberate indifference to serious medical needs. *See Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir. 1991). )). Deliberate indifference "is an extremely high standard to meet." *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006) (quoting *Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001)). The test for establishing deliberate indifference is "one of subjective recklessness as used in the criminal law." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). A plaintiff must show that a defendant's "response indicate[d] that the [defendant] subjectively intended that harm occur." *Thompson v. Upshur County*, 245 F.3d 447, 458-59 (5th Cir. 2001).

An official is not deliberately indifferent unless he "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference." *Id*. at 838. Plaintiff must "submit evidence that jail officials 'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any other similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Davidson*, 91 Fed. App'x at 965 (quoting *Domino*, 239 F.3d at 756). "[D]elay in medical care can only constitute an Eighth Amendment violation if there has been deliberate indifference, which results in substantial harm." *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993).

Negligent conduct by jail officials does not rise to the level of a constitutional

violation. *Daniels v. Williams*, 474 U.S. 327, 333-34 (1986).  Plaintiff is not entitled to the "best" medical treatment available. *McMahon v. Beard*, 583 F.2d 172, 174 (5th Cir. 1978); *Irby v. Cole*, 2006 WL 2827551, at *7 (S.D. Miss. Sept. 25, 2006).  Further, an inmate's "disagreement with medical treatment does not state a claim for Eighth Amendment indifference to medical needs." *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 2001).

The undersigned finds that based on the credible testimony and evidence presented at the hearing, Plaintiff failed to prove by a preponderance of the evidence that Nurse Moore was deliberately indifferent to any serious medical need.  The evidence presented demonstrates that Nurse Moore monitored Plaintiff's chronic conditions, assessed his acute conditions, scheduled him multiple appointments with outside medical professionals, and provided him multiple medications, including blood pressure medications. *See Banuelos v. McFarland*, 41 F.3d 232, 235 (5th Cir. 1995) (holding that "[m]edical records of sick calls, examinations, diagnoses, and medication may rebut an inmates' allegations of deliberate indifference.").  Plaintiff complains that Nurse Moore treated his medical issues with medications instead of adjustments to his diet and also complains that Nurse Moore did not send him to the hospital when he thought it was necessary.  Plaintiff's claims amount to disagreement over the course of treatment. "Disagreement with medical treatment does not state a claim for Eighth Amendment indifference to medical needs." *Norton*, 122 F.3d at 292.  Because Plaintiff was receiving constitutionally adequate medical treatment, Plaintiff's claim against Defendant Nurse Moore should be dismissed.

## RECOMMENDATION

For the foregoing reasons, the undersigned recommends that this action be dismissed with prejudice.

## NOTICE OF RIGHT TO OBJECT

In accordance with the Rules of this Court, any party, within fourteen days after being served a copy of this recommendation, may serve and file written objections to the recommendations, with a copy to the District Judge, the U.S. Magistrate Judge, and the opposing party. The District Judge at that time may accept, reject or modify in whole or in part, the recommendation of the Magistrate Judge, or may receive further evidence or recommit the matter to this Court with instructions. Failure to timely file written objections to proposed findings, conclusions, and recommendations contained in this report will bar an aggrieved party, except on the grounds of plain error, from attacking on appeal unobjected to proposed factual findings and legal conclusions accepted by the District Court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415 (5th Cir. 1996).

This 9th day of February, 2018.

s/ Michael T. Parker
United States Magistrate Judge
